**Melissa KENNEDY, as Next Friend for Michael Dan Kennedy, Petitioner,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–1009V.**

United States Court of Federal Claims.

Filed: April 28, 2011.

---

Reissued: May 16, 2011.[1]

1. An unredacted version of this opinion was issued under seal on April 28, 2011. The parties were given an opportunity to propose redactions, but no such proposals were made. Nonetheless, the court has incorporated some minor changes into this opinion.

Andrew D. Downing, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, for Melissa Kennedy, as next friend for Michael Dan Kennedy.

Michael P. Milmoe, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General Tony West, for respondent.

## OPINION

ALLEGRA, Judge:

Melissa Kennedy, as next friend of her brother, Michael Dan Kennedy,[2] seeks review of an order issued by Special Master George Hastings, Jr. denying a motion under RCFC 60 seeking relief from a judgment entered in 1992. Petitioner originally brought this action pursuant to the National Vaccine Injury Compensation Act (the Vaccine Act), 42 U.S.C. §§ 300aa–10 to 300aa–34 (2006), alleging that he suffers from mental retardation as a result of a diphtheria, pertussis and tetanus (DPT) vaccination he received. The petition was denied in 1992. Petitioner claims, however, that his parents improperly represented him in this suit after he turned eighteen in 1990. This warrants relief from that judgment under RCFC 60, he asserts. The Special Master rejected these claims. After further consideration of petitioner's claims, and for the reasons that follow, the court agrees with the Special Master and finds that there is no basis to set aside the prior judgment here.

## I.

On December 4, 1972, Michael Kennedy (Michael) was administered a DPT inoculation. Shortly thereafter, he exhibited numerous health complications. Two years later, in 1974, he was diagnosed as mentally retarded.

On September 17, 1990, Danny and Martha Elizabeth Kennedy, acting *pro se* on behalf of their son, filed a petition against the Secretary of Health and Human Services seeking compensation under the Vaccine Act, for injuries that Michael allegedly sustained following his DPT vaccination. On October 3, 1990, Michael turned eighteen. On December 14, 1990, Chief Special Master Golkiewicz issued an order notifying petitioner that his petition lacked the evidentiary proof necessary to constitute a *prima facie* case under 42 U.S.C. § 300aa–11(c). On February 4, 1991, Martha Kennedy attempted to shore up the petition by filing supportive reports from a doctor and a nurse.

On April 4, 1991, the case was referred to Special Master Hastings. On May 16, 1991, Martha Kennedy filed a report from a second doctor. On July 18, 1991, respondent filed its report and a motion to dismiss in which it asserted that petitioner could neither demonstrate a Table injury nor prove causation.[3]

---

**2.** Where appropriate, the court will refer to these individuals collectively as "petitioner." In referring to petitioner, whenever in this opinion the context so requires, the masculine gender shall be employed.

**3.** The Vaccine Injury Table "lists the vaccines covered under the [Vaccine] Act; describes each

On July 24, 1991, the Special Master held a telephonic status conference with both parents and respondent. As memorialized in a September 5, 1991, order, during that conference, the Special Master "advised the Kennedys of their right to be represented by counsel to be paid by the Vaccine Program" and "that petitioners would be unable to obtain an award under the Program without the testimony of a medical doctor to the effect that Michael's retardation was caused ... by the DPT vaccine." Special Master Hastings gave petitioner sixty days, until September 22, 1991, to produce the necessary documentation. On September 26, 1991, the Special Master granted the parents' request for a thirty day extension. On October 22, 1991, Martha Kennedy filed a report from a third doctor. On November 14, 1991, the Special Master issued an order stating that this most recent report did not support petitioner's claim; he gave petitioner "one further chance" to file a report within thirty days. On November 25, 1991, Martha Kennedy requested an additional sixty days in which to respond, which extension was granted. On February 26, 1992, Martha Kennedy filed a report from a fourth doctor. On March 5, 1992, Special Master Hastings determined that this report too was insufficient. Despite finding that "the family considers their efforts complete," Special Master Hastings, "out of caution," gave petitioner an additional forty-five days (later extended by an additional sixty days) to provide the necessary documentation.

On April 22, 1992, Martha Kennedy filed a letter with the court in which she admitted that "there may not be a doctor anywhere [who] can testify that the DPT caused this condition." She, nonetheless, asked that the case be kept open. On July 13, 1992, Special Master Hastings denied the petition, ruling that petitioner "has not offered medical records or a medical opinion indicating that the onset of any encephalopathy ... was mani-

fested in the three days subsequent to his DPT inoculation" and that "there clearly is insufficient evidence in the record to raise an issue of whether any of his injuries were in fact caused by the DPT vaccine." *Danny Kennedy v. Sec'y of Health & Human Servs.*, No. 90–1009V, slip op. at 4 (Fed.Cl. Spec.Mstr. July 13, 1992) (*"Kennedy I"*). This opinion advised that "[u]nless petitioner files a timely motion for review of this decision, the clerk shall enter judgment dismissing this petition with prejudice." *Id.* at 6. But, the parents did not file a motion for review and the Clerk dismissed the petition with prejudice.

Seventeen years later, on August 24, 2009, petitioner filed a motion to appoint Andrew D. Downing as his attorney, which motion, as consented, was automatically granted. On that same day, petitioner filed a motion for relief from the 1992 judgment. In that motion, petitioner argued that Special Master Hastings's 1992 decision is void under RCFC 60(b)(4) because a guardian *ad litem* or counsel was not appointed for Michael when he turned eighteen on October 3, 1990. The motion, as well, alleged that Danny and Martha Kennedy's *pro se* representation of their son was unlawful and warranted relief from judgment under RCFC 60(b)(6).

On October 29, 2010, Special Master Hastings denied the motion for relief, finding that under the "plain language of the Vaccine Act," a parent may represent a son or daughter *pro se*, and as such, Danny and Martha Kennedy were the appropriate legal representatives to file the petition on their son's behalf. *Kennedy v. Sec'y of Health & Human Servs.*, 2010 WL 4810233 (Fed.Cl. Spec.Mstr. Oct. 29, 2010) (*"Kennedy II"*). Observing that this analysis "would [not] change when a child reaches the age of majority during the course of a Program proceeding," the Special Master concluded that Michael's parents properly represented him

vaccine's compensable, adverse side effects; and indicates how soon after vaccination those side effects should first manifest themselves. Claimants who show that a listed injury first manifested itself at the appropriate time are *prima facie* entitled to compensation." *Bruesewitz v. Wyeth LLC,* —— U.S. ——, 131 S.Ct. 1068, 1073–74, 179 L.Ed.2d 1 (2011) (citing 42 U.S.C. §§ 300aa–

11(c)(1), 300aa–13(a)(1)(A), 300aa–14(a); 42 C.F.R. § 100.3). "A claimant may also recover for unlisted side effects, and for listed side effects that occur at times other than those specified in the Table, but for those the claimant must prove causation." *Bruesewitz,* 131 S.Ct. at 1074 (citing 42 U.S.C. § 300aa–11(c)(1)(C)(ii)).

throughout the proceeding. *Id.* at *6. Special Master Hastings also held that "nothing on the record ... supports the implication that the Kennedys acted incompetently in their efforts to obtain support for their Program claim on Michael's behalf." *Id.* at *7.

On November 29, 2010, Mr. Downing filed a motion for review of the denial of the motion for relief from judgment. On December 29, 2010, respondent filed its rejoinder to the motion for review, objecting to the relief requested. On March 10, 2011, the court requested that Michael's mother file an affidavit attesting to facts that would qualify her as a "next friend" under RCFC 17(c), capable of hiring Mr. Downing on behalf of her son. *Kennedy v. Sec'y of Health & Human Servs.*, 2011 WL 1087202 (Fed.Cl. Mar. 10, 2011) ("*Kennedy III*"). On March 14, 2011, Melissa Kennedy, Michael's sister, instead filed an affidavit expressing her desire to be appointed in place of her mother. On March 17, 2011, the court found that Melissa Kennedy met the requirements for being appointed Michael's "next friend" and appointed her as such under RCFC 17(c). *Kennedy v. Sec'y of Health & Human Servs.*, 99 Fed.Cl. 534 (2011) ("*Kennedy IV*"). On March 18, 2011, the court held oral argument on petitioner's motion for review.

## II.

Under the Vaccine Act, this court may review a special master's decision upon the timely request of either party. *See* 42 U.S.C. § 300aa–12(e)(1)–(2). In that instance, the court may: "(A) uphold the findings of fact and conclusions of law ..., (B) set aside any findings of fact or conclusion of law ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..., or (C) remand the petition to the special master for further action in accordance with the court's direction." *Id.* at § 300aa–12(e)(2)(A)–(C). Under this statute, findings of fact and discretionary rulings

thus are reviewed under an "arbitrary and capricious" standard, while legal conclusions are reviewed *de novo*. *See Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992); *Doyle ex rel. Doyle v. Sec'y of Health & Human Servs.*, 92 Fed.Cl. 1, 5 (2010).[4]

In a case not previously reviewed by a judge of this court (as is true here), Vaccine Rule 36(a)(2) authorizes a special master to consider, in the first instance, a motion seeking relief from judgment under RCFC 60.[5] Rule 60(b) provides an "exception to finality," *Gonzalez v. Crosby*, 545 U.S. 524, 529, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), that "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," *id.* at 528, 125 S.Ct. 2641; *see also United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 1376, 176 L.Ed.2d 158 (2010). Petitioner claims entitlement to relief from judgment under two clauses of this rule, RCFC 60(b)(4) and (b)(6). The former clause permits the court to relieve a party from a final judgment if "the judgment is void," RCFC 60(b)(4), while the latter offers relief from judgment for "any other reason that justifies relief," RCFC 60(b)(6). In order to grant relief under these provisions, the court must find that a "grave miscarriage of justice" would result if relief is denied. *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). The court will consider petitioner's claims under these clauses—and the Special Master's corresponding rulings—*seriatim.*

### A.

"Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *United Student Aid Funds,* 130

---

**4.** *See also Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed.Cir.2000); *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed.Cir.1994); *Savin ex rel. Savin v. Sec'y of Health & Human Servs.*, 85 Fed.Cl. 313, 315 (2008). Similar principles apply to this court's review of findings made by special masters in ruling on a motion for relief

from judgment under RCFC 60. *See* Vaccine Rule 36(b)(7).

**5.** RCFC 60 is substantively identical to Rule 60 of the Federal Rules of Civil Procedure. *See Webster v. United States*, 93 Fed.Cl. 676, 679 (2010).

S.Ct. at 1380. Maintaining this balance requires that "the concept of void judgment ... [be] narrowly construed," 12 James Wm. Moore *et al.,* Moore's Federal Practice ¶ 60.44[1][a] (3d ed. 2011), lest this "exception to finality ... swallow the rule." *United Student Aid Funds,* 130 S.Ct. at 1377; *see also Servants of Paraclete v. Does,* 204 F.3d 1005, 1009 (10th Cir.2000).

 "A void judgment is a legal nullity"—"one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds,* 130 S.Ct. at 1377 (citing Restatement (Second) of Judgments § 22 (1980)); *see also United States v. Bigford,* 365 F.3d 859, 865 (10th Cir.2004). A judgment is not void merely because it may be technically defective or erroneous in some respect. *See United Student Aid Funds,* 130 S.Ct. at 1377; *Farm Credit Bank of Balt. v. Ferrera–Goitia,* 316 F.3d 62, 67 (1st Cir. 2003); *Hoult v. Hoult,* 57 F.3d 1, 6 (1st Cir.1995). Nor is a motion under Rule 60(b)(4) "a substitute for a timely appeal." *United Student Aid Funds,* 130 S.Ct. at 1377; *see also Kocher v. Dow Chem. Co.,* 132 F.3d 1225, 1229 (8th Cir.1997). "Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds,* 130 S.Ct. at 1377; *see also United States v. Walker,* 109 U.S. 258, 266, 3 S.Ct. 277, 27 L.Ed. 927 (1883); *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,* 12 F.3d 1080, 1084 (Fed.Cir.1993) (judgment is void under Rule 60(b)(4), "only when the court that rendered the judgment lacked jurisdiction or failed to act in accordance with due process of law").

In the case *sub judice,* petitioner claims that the 1992 decision is void because his due process rights were violated when his parents were permitted to represent him in this vaccine matter after he attained the age of majority. As the Special Master found, however, there are several flaws in this claim.

**1.**

First, as the Special Master noted, petitioner's arguments hinge on an interpretation of the Vaccine Act that is "contrary to the plain language of the [statute] itself." *Kennedy II,* 2010 WL 4810233, at *8. Section 300aa–11(b)(1)(A) of Title 42 provides that "the legal representative" of an injured person who is a "minor or is disabled ... may ... file a petition for compensation under the Program." Section 300aa–33(2) of the same title, in turn, defines the term "legal representative" as a "parent or an individual who qualifies as a legal guardian under State law." If, under the latter provision, a "parent" is a "legal representative," and, under the former, a "legal representative" can represent a "disabled" son or daughter, then it follows, *a fortiori,* that a parent can represent a disabled son or daughter, irrespective of the latter's age. For this syllogism to be true, of course, section 300aa–33(2) must be read as treating the parent as a "legal representative," whether *vel non* the parent "qualifies as a legal guardian under State law." The Special Master read the statute precisely this way, stating that "[t]his definition indicates that under the Vaccine Act, a 'parent' or an injured child *automatically* qualifies as a 'legal representative,' who is legally authorized to file a petition under the Vaccine Act." *Kennedy II,* 2010 WL 4810233, at *5 (emphasis in original); *see also Johnston v. Sec'y of Health & Human Servs.,* 1990 WL 299393, at *11 n. 20 (Fed.Cl.Spec.Mstr. May 21, 1990), *aff'd,* 22 Cl.Ct. 75 (1990) (taking the same view).

 This reading of the statute makes grammatical sense. Under the "last antecedent rule," when a modifier (here, the clause "who qualifies as a legal guardian under State law") is not set off from a series of antecedents by a comma, it is presumed to apply only to the last antecedent, *i.e.,* the last noun or phrase that it immediately follows (here, "an individual").[6] Application of this rule yields an interpretation of section

---

**6.** *See Barnhart v. Thomas,* 540 U.S. 20, 26–27, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003); *Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1336 (Fed.Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 754, 172 L.Ed.2d 727 (2008); *Anhydrides & Chems., Inc. v. United States,* 130 F.3d 1481, 1483 (Fed.Cir.1997); *see also* 2A C. Dallas Sands, Sutherland Statutory Construction

300aa–32(2) under which parents are always viewed as the legal guardians of a son or daughter, whether or not they also qualify as such under state law. "While [the last antecedent] rule is not an absolute and can assuredly be overcome by other indicia of meaning," *Barnhart*, 540 U.S. at 26, 124 S.Ct. 376, petitioner has provided no indication—in the text, structure or legislative history of the Vaccine Act—that Congress intended otherwise. To the contrary, construing the statute to allow a parent to represent an offspring who is disabled, irrespective of the latter's age, is in keeping with the Vaccine Act's avowed purpose of making compensation proceedings informal and as non-adversarial as possible. *See* H.R.Rep. No. 99–908, at 12–13, 16–17, 1986 U.S.C.C.A.N. 6344 (1986); *see also Bruesewitz*, 131 S.Ct. at 1073; *Shalala v. Whitecotton*, 514 U.S. 268, 269, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995); *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1352–53 (Fed.Cir.2011).[7]

To be sure, the statutory language here is hardly a picture of clarity. Nor can one be

totally sanguine with the prospect of allowing every sort of parent to represent their disabled sons and daughters, irrespective of the individual circumstances. But, these concerns, such as they are, underlie the relevant statutory language both as it applies to claimants who are minors and disabled adults. And petitioner has formulated no basis upon which to conclude that the statute should be construed one way for minors and a different (and more rigorous) way for disabled adults.[8]

Even if the Vaccine Act did not authorize petitioner's parents to continue to represent their son here, the Special Master could have appointed the parents as "next friends" or guardians *ad litem* for petitioner under RCFC 17(c)(2).[9] Indeed, Michael's sister recently invoked this very provision in seeking—and obtaining—"next friend" status so that she could represent her brother in this matter.[10] There is little doubt that, in 1990, the Special Master implicitly recognized the right of Michael's parents to act on their

§ 47:33 (7th ed. 2010) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.").

7. The Special Master believed that since 42 U.S.C. § 300aa-11(b)(1)(A) authorizes parents to file petitions on behalf of their offspring it also authorizes parents to prosecute those cases once filed. In the court's view, this is a reasonable construction of the statute. *See generally United States ex rel. Bragg v. SCR Med. Transp., Inc.*, 2011 WL 1357490, at *1 (N.D.Ill. Apr. 8, 2011) (interpreting term "file" in a statute as meaning "to file and prosecute suit").

8. If such a distinction makes sense, it is, of course, for Congress, and not this court, to adopt the necessary change. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *Bankamerica Corp. v. United States*, 462 U.S. 122, 140, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983); *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575, 72 S.Ct. 985, 96 L.Ed. 1142 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").

9. RCFC 17(c) states:
 **(c) Minor or Incompetent Person.**
 (1) *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person:

 (A) a general guardian;
 (B) a committee;
 (C) a conservator; or
 (D) a like fiduciary.
(2) *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

Technically speaking, an incompetent plaintiff sues by a *prochein ami*, or "next friend," while an incompetent defendant is represented by a guardian *ad litem*. *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 198 n. 1 (2d Cir.2003), *cert. denied*, 540 U.S. 1195, 124 S.Ct. 1448, 158 L.Ed.2d 107 (2004); *Dacanay v. Mendoza*, 573 F.2d 1075, 1076 n. 1 (9th Cir.1978). However, because the duties and powers of both types of representatives are nearly the same, the terms are often used interchangeably. *See Ferrelli*, 323 F.3d at 198 n. 1.

10. *See Kennedy IV*, 99 Fed.Cl. at 535 (appointing Melissa Kennedy her brother's "next friend" under RCFC 17(c)(2)); *Kennedy III*, 2011 WL 1087202, at *2 (discussing the applicability of RCFC 17(c) to the appointment of a "next friend" in a case brought under the Vaccine Program).

son's behalf even after he attained majority status. Had the parents formally moved to be appointed "next friends" or guardians *ad litem* under RCFC 17(c), they almost certainly would have been granted that status, as it appears that they were truly dedicated to their son's best interests and had no apparent conflicts between their interests and his.[11] Even today, petitioner can scarcely argue otherwise. Moreover, although the Special Master did not appoint Michael's parents as his guardians or "next friends," RCFC 17(c)(2) does not require this, but instead affords the court the additional option of "issu[ing] another appropriate order." In the court's view, the latter is what the Special Master did. He issued a series of "appropriate orders" to ensure that petitioner's interests were being protected, in particular, affording petitioner's parents various forms of assistance and multiple opportunities to address the factual deficiencies in his case.

■■■ But, this all begs the question— does the Vaccine Act, in permitting an incompetent adult to be represented by his parents, violate the Due Process Clause of the Fifth Amendment? At a minimum, that clause requires notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *see also Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). These requirements have been held to apply to the Vaccine Program. *See Black v. Sec'y of Health & Human Servs.,* 93 F.3d 781, 789 (Fed.Cir.

1996); *Hervey v. Sec'y of Health & Human Servs.,* 88 F.3d 1001, 1003 (Fed.Cir.1996); *see also Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (interest of individual in continued receipt of social security benefits is "a statutorily created 'property' interest protected by the Fifth Amendment"). At the same time, however, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," *Cafeteria & Rest. Workers Union v. McElroy,* 367 U.S., 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), but rather a "flexible" concept, *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that varies with the particular circumstances of each case.[12] To determine what process is required in a particular case, the court must apply the balancing test articulated in *Mathews.* That test requires the consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

Under the three factors set forth in *Mathews,* the Vaccine Act, as augmented by this court's various procedural rules, provides a sufficient level of process. As to the first factor, it should be noted that petitioner's

11. As this court explained in paving the way for Melissa Kennedy to be appointed his "next friend"—

To qualify for appointment as a "next friend," an individual must: (i) provide adequate explanation for why the real party in interest cannot appear on his own behalf, such as mental incompetence or other disability; (ii) be truly dedicated to the best interests of the person on whose behalf the lawsuit is brought; (iii) have no interest that conflicts with that of the incompetent person; and (iv) have some significant relationship with the real party of interest, often that of a parent, a sibling or other close relative.

*Kennedy III,* 2011 WL 1087202, at *1 (citing *Whitmore v. Arkansas,* 495 U.S. 149, 163–164, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Sam*

*M., ex rel. Elliott v. Carcieri,* 608 F.3d 77, 85 (1st Cir.2010); *Hamdi v. Rumsfeld,* 294 F.3d 598, 603–04 (4th Cir.2002); *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.,* 873 F.2d 25, 29 (2d Cir.1989)).

12. *See Mathews,* 424 U.S. at 334, 96 S.Ct. 893 ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" (quoting *Morrissey,* 408 U.S. at 481, 92 S.Ct. 2593)); *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("'the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation'" (quoting *Cafeteria & Rest. Workers Union,* 367 U.S. at 895, 81 S.Ct. 1743)).

interest in a potential recovery arises from the same statute that creates the flexible, non-adversarial, process for adjudicating his rights and that afforded his parents the ability to represent his interests. It is difficult to divorce petitioner's potential recovery interest from the procedures adopted by Congress in creating that interest in concluding that petitioner's property interest is entitled to more protection than the statute affords. One is reminded of Mr. Justice Frankfurter's wise admonishment that differences in the origin and functions of less formal adjudicatory processes "preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts." *Fed. Comnc'ns Comm'n v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *see also Mathews*, 424 U.S. at 348, 96 S.Ct. 893.

The second *Mathews* factor addresses the risk of an erroneous decision occurring under the existing procedures in place and the probable value, if any, of additional or alternative procedural safeguards. On this count, it must be noted that both the Vaccine Act, as well as procedural rules like RCFC 17, provide the judicial officers in this court with considerable authority to ensure that incompetent individuals are properly represented. Indeed, in many ways, Congress has afforded this court's special masters greater authority in vaccine cases than is enjoyed by judges in other courts. As is reflected in the statute's legislative history, Congress authorized those special masters to take on an inquisitorial role, urging them to "be vigorous and dili-

gent in investigating factual elements necessary to determine the validity of the petitioner's claim." H.R.Rep. No. 99–908, at 17, 1986 U.S.C.C.A.N. 6344, 6358 (1986); *see also* H.R.Rep. No. 101–386, at 516 (1989) (Conf. Rep.); *Snyder ex rel. Snyder v. Sec'y of Health & Human Servs.*, 88 Fed.Cl. 706, 713–14 (2009). This view has been incorporated into rules like Vaccine Rule 8(b)(1), which indicates that the special master "will not be bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence governed by principles of fundamental fairness to both parties." *See also* Vaccine Rule 3(b)(2). All of these procedural protections combine to form a safety net that maintains the informality of the process while still minimizing the possibility of an erroneous decision.[13]

"The third *Mathews* factor addresses the State's interest." *Wilkinson v. Austin*, 545 U.S. 209, 227, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). Here, the additional protections that petitioner would have this court adopt must be balanced against the other goals of the Vaccine Act, none the least of which is to make available a relaxed adjudicatory process that promotes access to justice. Requiring parents to obtain formal guardianships before representing a son or daughter— which petitioner claims is constitutionally dictated—would come at a societal cost by undoubtedly preventing some families of lesser means from being able to file a petition. Thus, in enhancing the protections afforded some claimants, petitioner almost certainly would deny other claimants any meaningful access to the Vaccine Program.[14] In choos-

---

**13.** In *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 334, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), the Supreme Court rejected a challenge against a statute that capped the fee that could be paid to an attorney representing a veteran before the Veterans Administration seeking benefits for service-connected death or disability. Rejecting a claim that the fee limitation violated due process by severely limiting the ability of veterans to obtain counsel, the Court emphasized that the case was "distinguishable from our prior decisions because the process here is not designed to operate adversarially." *Id.* at 333, 105 S.Ct. 3180. In this regard, the Court explained, in terms that resonate here: "While counsel may well be needed to respond to opposing counsel or other forms of adversary in a trial-type proceeding, where as here no such adver-

sary appears, and in addition a claimant or recipient is provided with substitute safeguards such as a competent representative, a decisionmaker whose duty it is to aid the claimant, and significant concessions with respect to the claimant's burden of proof, the need for counsel is considerably diminished." *Id.* at 333–34, 105 S.Ct. 3180.

**14.** Petitioner seems to discount the impact of requiring all parents filing petitions under the Vaccine Program to qualify as guardians under state law. There are indications, however, that this burden would be significant. While in some states, parents are considered the "natural guardians" of their unemancipated minor children, that is not universally the case. *See, e.g.*,

ing amongst these alternatives, considerable weight must be given to the good-faith judgments made by Congress in constructing a program that allows parents to be the prime movers in pursuing compensation for their offspring. *See Walters,* 473 U.S. at 319–20, 105 S.Ct. 3180 ("deference to congressional judgment must be afforded" even against a claim of "a denial of the procedural due process guaranteed by the Fifth Amendment"); *Mathews,* 424 U.S. at 349, 96 S.Ct. 893 ("In assessing what process is due in this case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs....").

 A balance of the *Mathews* factors weighs heavily in favor of concluding that the Vaccine Act, as augmented by this court's procedural rules, is adequate to safeguard an incompetent petitioner's interests. Buttressing this conclusion are numerous decisions holding that the failure to appoint a guardian

*ad litem* for one who is incompetent does not render a judgment void. *See Zavala ex rel. Ruiz v. United States,* 876 F.2d 780, 784 (9th Cir.1989); *Hudnall v. Sellner,* 800 F.2d 377, 385 (4th Cir.1986), *cert. denied,* 479 U.S. 1069, 107 S.Ct. 960, 93 L.Ed.2d 1008 (1987) ("judgments entered against even legally adjudicated mental incompetents not represented by natural or appointed guardians are not void on the basis alone of their incompetence and lack of representation"); *Day v. Avery,* 548 F.2d 1018, 1023 n. 16 (D.C.Cir.1976), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); *Scott v. United States,* 190 F.2d 134, 137 (5th Cir.1951) (lack of proper representation of mental incompetent renders judgment "merely voidable," not void); *Stewart v. Ferer,* 163 F.2d 183, 184–85 (10th Cir.1947) ("[A] judgment ... in favor of a minor is not absolutely void because of failure to appoint a guardian *ad litem* for him.").[15] These cases factually run the gamut and include, most notably, a number of decisions construing Rule 17(c).[16] There is

Md.Code Ann., Est. & Trusts § 13–101(h) (parents not automatically considered guardians of minor children). In particular, parents often must be appointed a guardian for certain types of transactions involving money or property. *See, e.g.,* Conn. Gen.Stat. § 45a–631(a) (parents not considered guardians for transactions involving more than $10,000); *Delk v. Markel Am. Ins. Co.,* 81 P.3d 629, 639 n. 45 (Okla.2003) (parents not considered guardians for purposes of matters involving property); *see also* Howard M. Zaritsky, Tax Plan. Fam. Wealth Transfers ¶ 4.04 Legal Guardianships (2009) (hereinafter "Zaritsky") ("The minor's parents are the normal choice for legal guardians, but they are not automatically the legal guardians of the child's property."); 39 C.J.S. Guardian & Ward § 24 (2011). Parents in states with these guardianship requirements would have to incur the time and expense not only to petition a court for such a guardianship, but also to maintain that status. *See* Zaritsky, *supra,* at ¶ 4.04 (describing the typical steps in this process). Accordingly, requiring every parent to qualify as a guardian under state law likely would cause some parents to forego filing a petition at all—perhaps the reason why Congress decided to relax the representational rules under the Vaccine Program.

In terms of protecting incompetent individuals, it is worth noting that the Vaccine Program requires the appointment of a guardian before a substantial sum is given to a mentally-disabled petitioner. Discussing the impact of this on petitioner's argument, the Special Master noted—

Actually, it is routine in Vaccine Act cases that when a substantial sum is awarded to compen-

sate a mentally-disabled vaccinee, the vaccinee's parent, parents, or someone else is formally appointed as a legal guardian by a local probate court, to ensure that the award is under the ultimate supervision of a court. This is true even if the injured vaccinee is still a minor. The fact that this practice is routinely employed at the end of Vaccine Act cases involving substantial awards is not supportive of Mr. Downing's argument that whenever a vaccinee turns 18 during the course of a Vaccine Act case, the proceedings after that date are automatically null and void unless an attorney is appointed as the vaccinee's legal guardian.

*Kennedy II,* 2010 WL 4810233, at *7 (emphasis omitted).

15. To the extent this question might be viewed as impacted or controlled by state law, *see, e.g., Salceda v. Sec'y of Health & Human Servs.,* 33 Fed.Cl. 164, 166 n. 2 (1995), it is noteworthy that Oklahoma state courts have reached the same result. *See Gomes v. Hameed,* 184 P.3d 479, 489 n. 31 (Okla.2008) ("When a judgment is rendered against a minor who is not represented by a guardian *ad litem,* it is voidable."); *Lane v. Snitz,* 389 P.2d 962, 964 (Okla.1964); *Allen v. Hickman,* 383 P.2d 676, 678 (Okla.1963); *Stephenson v. Stephenson,* 196 Okla. 623, 167 P.2d 63, 65 (1946) (failure to provide proper representation of a minor or incompetent person "does not render judgment void, but at most voidable").

16. *See Fernandez–Vargas v. Pfizer,* 522 F.3d 55, 66–67 (1st Cir.2008) (failure to appoint parent

nothing to distinguish this phalanx of cases from the situation here—indeed, petitioner has not cited a single case that supports his contrary position. In short, there is no legal support for the proposition that the Special Master's failure to apply Rule 17(c), in and of itself, rendered the subsequent decision against petitioner void.

**2.**

 Through his sister, however, petitioner argues that even if his parents could be viewed as his proper representatives or guardians, they could not represent him themselves, *pro se*, but were obliged to obtain legal counsel. A number of cases, indeed, hold that a guardian or next friend appointed under Rule 17(c) cannot proceed *pro se*, but must obtain counsel.[17] This rule is designed to protect the interests of minors and incompetents, recognizing that the choice to appear *pro se* is not a real option for them. *See Myers v. Loudoun County Pub. Schs.*, 418 F.3d 395, 400–01 (4th Cir.2005); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir.1990); *Meeker*, 782 F.2d at 154. These cases rely on various Federal statutes and rules that generally preclude a non-attorney from representing another individual in federal court, most prominently 28 U.S.C. § 1654. *See Meeker*, 782 F.2d at 154 (noting that 28 U.S.C. § 1654 only authorizes individuals to plead and conduct their own cases personally); *see also*

*Alli v. United States*, 93 Fed.Cl. 172, 176 (2010) (discussing the analogous provisions of RCFC 83.1(a)(3)). They conclude that where an individual appointed under Rule 17(c) does not obtain counsel, the case should be dismissed without prejudice for failure to prosecute. *See Shepherd*, 313 F.3d at 971; *Johns*, 114 F.3d at 877; *Meeker*, 782 F.2d at 154–55.

However, this "rule is not ironclad." *Elustra*, 595 F.3d at 705; *see also Tindall*, 414 F.3d at 285 (noting that this rule "should be applied gingerly"). Courts, for example, have held that parents may bring and prosecute claims *pro se* on behalf of their children in an effort to secure supplemental social security benefits. *See Machadio v. Apfel*, 276 F.3d 103, 106–08 (2d Cir.2002); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *see also Price v. Barnhart*, 129 Fed.Appx. 699 (3d Cir.2005). These decisions rely upon various statutory and regulatory provisions authorizing parents to act on behalf of a minor social security beneficiary. *See Machadio*, 276 F.3d at 107 (discussing 42 U.S.C. § 406(a)(1) (2000)); *Harris*, 209 F.3d at 416 (same). Based on these provisions, the courts have found that, in the social security setting, the interests of the parents and child are so "closely intertwined" as to make it less appropriate to view the case as belonging solely to the child. *Machadio*, 276 F.3d at 106; *see also Harris*, 209 F.3d at 416; *see generally, U.S. ex rel. Rockefeller v. Westing-*

---

guardian under Rule 17(c) did not render judgment void); *Westcott v. U.S. Fidelity & Guar. Co.*, 158 F.2d 20, 22 (4th Cir.1946) (technical violation of Rule 17(c) did not render judgment void); *Till v. Hartford Acc. & Indem. Co.*, 124 F.2d 405, 408–09 (10th Cir.1941) (same); *Rutland v. Sikes*, 203 F.Supp. 276, 277 (D.S.C.1962), *aff'd*, 311 F.2d 538 (4th Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1871, 10 L.Ed.2d 1053 (1963) (failure to appoint guardian *ad litem* did not render judgment void where everything was done for minor defendant that could have been done if a guardian had formally been appointed under Rule 17); *see also In re Wilcox*, 229 B.R. 411 (Bankr.N.D.Ohio 1998) ("[E]ven though Ohio Civ. R. 17(b) requires the court to appoint a guardian *ad litem* for the protection of a minor in a civil proceeding, the failure of the court to comply with Ohio Civ. R. 17(b) does not make the judgment void, but merely voidable."); 25 Fed. Proc. § 59:94 ("The failure of a federal court to appoint a guardian *ad litem* for an ... incompetent party under FRCP 17(c) is, at most,

mere error which does not defeat jurisdiction and, therefore, any judgment rendered cannot be attacked collaterally on that ground.").

17. *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir.2010); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir.2005) ("It is thus a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child."); *Shepherd v. Wellman*, 313 F.3d 963, 970–71 (6th Cir.2002); *Devine v. Indian River County Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997), *overruled on other grounds, sub nom. Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) ("a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney"); *Johns v. County of S.D.*, 114 F.3d 874, 876–77 (9th Cir.1997).

*house Elec. Co.*, 274 F.Supp.2d 10, 17 (D.D.C. 2003), *aff'd sub nom., Rockefeller ex rel. United States v. Washington TRU Solutions, LLC*, 2004 WL 180264 (D.C.Cir. Jan. 21, 2004), *cert. denied, sub nom., Rockefeller v. Westinghouse Elec. Co.*, 543 U.S. 820, 125 S.Ct. 60, 160 L.Ed.2d 29 (2004) (discussing *Machadio* ). Several courts have likewise concluded that parents may prosecute claims *pro se* on behalf of their children under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*[18] Informed by Congress' judgment and agencies' implementing regulations, the courts in both categories of cases have refused to dismiss cases brought by parents on behalf of their children where the former are appearing *pro se*.

In critical regards, the Vaccine Act is like these other special statutes in allowing parents to represent their offspring under the program—as in the social security context, the interests of parent and child here are "closely intertwined." As such, it would appear that the Vaccine Act must also be construed to provide an exception to the general rule and to authorize a parent to proceed *pro se*, despite the normal rule requiring a guardian or next friend to obtain counsel. Again, though, the question is not whether allowing the parents to proceed *pro se* violates statutes, such as 28 U.S.C. § 1654, or rules like RCFC 83.1(a)(3), but rather whether that practice violates petitioner's due process rights, thereby rendering the 1992 decision "void?" And, notably, none of the cases dealing with the failure of a guardian to obtain counsel have invalidated a decision on that basis. Petitioner has not shown otherwise, particularly not in the context of the more flexible representation rules associated with the Vaccine Program, and especially given the other protections afforded petitioners by the Vaccine Act, as discussed above. Accordingly, RCFC 60(b)(4) avails petitioner naught.[19]

## B.

▮▮▮▮▮ Unable to demonstrate either a jurisdictional error or a due process violation, petitioner turns, alternatively, to RCFC 60(b)(6). A motion for relief from judgment under RCFC 60(b)(6) may not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir.2011); *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 85 (1st Cir.2010).[20] These clauses, rather, are

---

**18.** In fact, the circuits are split as to whether similar considerations permit a parent acting *pro se* to represent a child under the IDEA. *Compare Maroni v. Pemi–Baker Reg'l Sch. Dist.*, 346 F.3d 247, 250 (1st Cir.2003) (permitting this practice); *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir.1998) (per curiam), *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 363 (1999) (same); *with Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir.2001) (per curiam) (rejecting this practice); *Devine*, 121 F.3d at 581–82 (same); *see generally*, Justin M. Bathon, "Defining 'Parties Aggrieved' under the Individuals with Disabilities Education Act: Should Parents Be Allowed to Represent Their Disabled Child Without an Attorney? *Maroni v. Pemi–Baker Regional School District*, 346 F.3d 247 (1st Cir.2003)," 29 S. Ill. U. L.J. 507 (2005). In *Winkelman*, the Supreme Court rendered this intercircuit conflict largely academic by holding that parents have an independent right to bring suit under the IDEA. In so deciding, the Supreme Court held that it "need not reach petitioner's alternative argument, which concerns whether IDEA entitles parents to litigate their child's claims *pro se*." 550 U.S. at 535, 127 S.Ct. 1994.

**19.** Had this representation issue been raised in 1990, and had the Special Master adopted the view of the law petitioner currently espouses, the Special Master, consistent with the precedents cited above, most likely would have dismissed petitioner's case without prejudice. While the 1992 adverse judgment against petitioner would not have occurred, an earlier dismissal most likely would have ended petitioner's pursuit of compensation, as his claim would have fairly quickly been time-barred under the statute of limitations/repose found in 42 U.S.C. § 300aa–16(a)(1).

**20.** Hence, in addition to the voidness ground discussed above, relief may also not be provided under RCFC 60(b)(6) for "mistake, inadvertence, surprise, or excusable neglect," RCFC 60(b)(1); "newly discovered evidence," RCFC 60(b)(2); "fraud ..., misrepresentation, or misconduct by an opposing party," RCFC 60(b)(3); and if "the judgment has been satisfied, released, or discharged," "is based on an earlier judgment that has been reversed or vacated," or "applying it prospectively is no longer equitable," RCFC 60(b)(5).

"mutually exclusive." *Pioneer Inv. Servs.*, 507 U.S. at 393, 113 S.Ct. 1489. This result is based, in part, on the desire to prevent Rule 60(b)(6) from being used to avoid the one-year limitation on motions that fall under the earlier clauses of the rule. *Id.*; *see also Salazar ex rel. Salazar v. Dist. of Columbia*, 633 F.3d 1110, 1116 (D.C.Cir.2011).[21] While Rule 60(b)(6), at times, has been described as a "grand reservoir of equitable power to justice," *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir.), *cert. denied*, —— U.S. ——, 131 S.Ct. 506, 178 L.Ed.2d 376 (2010), it is well-accepted that such a motion may be granted only upon a showing of extraordinary circumstances. *Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *see also Liljeberg*, 486 U.S. at 873, 108 S.Ct. 2194 (Rehnquist, C.J., dissenting); *Klapprott v. United States*, 335 U.S. 601, 613, 69 S.Ct. 384, 93 L.Ed. 266 (1949); *Hernandez v. Thaler*, 630 F.3d 420, 429 (5th Cir.2011) (per curiam). Again, this strict interpretation of the broad text of Rule 60(b)(6) is essential if the finality of judgments is to be preserved. *See Gonzalez*, 545 U.S. at 535, 125 S.Ct. 2641 (citing *Liljeberg*, 486 U.S. at 873, 108 S.Ct. 2194). To construe the rule otherwise would allow the exception to swallow the rule.

Petitioner argues that he is entitled to relief under Rule 60(b)(6) because his parents provided ineffective assistance when representing him during the first stage of this action. This claim is untenable for two reasons.

First, the court is reluctant to find this sort of "ineffective assistance" an "extraordinary circumstance" warranting relief under Rule 60(b)(6). Courts have generally refused to grant relief under clause (6) based upon the ineffective assistance of counsel, noting that such claims are better dealt with, if at all, under the "excusable neglect" provision of Rule 60(b)(1). *See Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1118 (7th Cir.1994) ("counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief"); Moore's Fed. Prac., *supra* at ¶ 60.48; *cf. Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168–69 (9th Cir.2002).[22] Nor have courts afforded relief under Rule 60(b)(6) where it was claimed that a litigant should be relieved of a judgment because he or she suffered adverse consequences from a decision to proceed *pro se*.[23] The latter cases proceed from the rationale that Rule 60(b)(6) does not relieve a party from a "free, calculated, and deliberate choice." *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 6 (1st Cir.2001) (quoting *Ackermann*, 340 U.S. at 198, 71 S.Ct. 209).

Of course, this case is different—petitioner obviously cannot be faulted for his parents'

**21.** Rule 60(c)(1) requires that motions under Rule 60(b)(1)-(3) to be filed within one year, but, as will be discussed in greater detail below, permits motions under Rule 60(b)(6) to be filed within a "reasonable time." *See also Ungar*, 599 F.3d at 85 n. 4; *Arrieta v. Battaglia*, 461 F.3d 861, 864–65 (7th Cir.2006).

**22.** At least some of these cases refuse to allow such claims to proceed under Rule 60(b)(6) because Rule 60(b)(1) requires a party to pursue a claim of excusable neglect within one year after the judgment. *See Ungar*, 599 F.3d at 85; *see also Pioneer Inv. Servs. Co.*, 507 U.S. at 393, 113 S.Ct. 1489; *Klapprott*, 335 U.S. at 613–14, 69 S.Ct. 384. Some cases distinguish these cases in holding that an attorney's "constructive disappearance" from a case, because, for example, of a psychological disorder, can be an "exceptional circumstance" justifying Rule 60(b)(6) relief. *See United States v. Cirami*, 563 F.2d 26, 34 (2d Cir.1977); *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**23.** *See, e.g., Greenawalt v. Stewart*, 105 F.3d 1268, 1273 (9th Cir.1997) (though courts generally loosen the rules of procedure for *pro se* litigants, neither "inattention nor inexperience constitutes a[n] extraordinary circumstance that justifies Rule 60(b)(6) relief"); *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir.1995) (finding that a plaintiff's *pro se* status does not equate to an "extraordinary circumstance" entitling him to relief); *Neuman v. United States*, 2008 WL 117859, at *2 (S.D.Ill. Jan. 10, 2008) ("The mere fact that [plaintiff] is a *pro se* attorney is not a 'special circumstance' that would allow relief under Rule 60(b)."); *Williams v. Brann*, 2006 WL 2401112, at *2 (E.D.Wis. Aug. 18, 2006) ("It would be inequitable to allow a plaintiff to use one's *pro se* status, without more, to constitute exceptional circumstances under Rule 60(b)(6) when the controlling case law does not allow a plaintiff who is represented by counsel to invoke Rule 60(b)(6) in situations where his attorney provides inadequate or negligent legal assistance.").

decision to proceed *pro se* or for any alleged deficiencies in their representation of his interests. Yet, the rationale underlying the decisions discussed above would clearly apply here had petitioner's parents filed—and the Special Master granted—an application to appoint them as petitioner's guardians *ad litem* or next friends under RCFC 17(c). In that instance, petitioner would be left to argue that his parents, appearing *pro se*, were negligent in pursuing his case—an argument that courts have often rejected as a basis for invoking RCFC 60(b)(6). That this appointment did not formally occur is no less a technicality under the (b)(6) clause than it is under the (b)(4) clause. A contrary ruling would allow the new representative of a legally incompetent individual to set aside an adverse judgment by claiming that the old representative had ineffectively represented the individual's interest. Such a holding would severely threaten the finality of judgments, particularly under the Vaccine Act, which, as noted above, authorizes parents to represent their children. The Special Master observed as much in rejecting petitioner's motion, stating that "[i]f carried to their logical conclusion, these arguments would mean that a very large number of prior Vaccine Act cases would be subject to reopening." *Kennedy II*, 2010 WL 4810233, at *7.

But, in many ways, the thorny issues posed by petitioner's arguments are purely hypothetical. Nothing suggests that the representation provided by petitioner's parents actually was incompetent, ineffective or otherwise substandard. Indeed, Special Master Hastings, who handled both the original proceedings in this case, as well as the motion for relief from judgment, found quite to the contrary. Reflecting on his earlier interactions with the parents during status conferences, he recently found that "Mrs. Kennedy, in particular, [was] a competent person who seemed to understand the discussion during those conferences." *Kennedy II*, 2010 WL 4810233, at *6. He added that "Mrs. Kennedy understood that she needed to present the

opinion of a medical expert who could causally connect Michael's vaccination and his disability." *Id.* The record fully supports these findings, as it reveals that the Kennedys successfully sought extensions of time in which to provide medical evidence on behalf of their son and, in fact, timely provided that information on at least three different occasions. This evidence was substantial, and included all of petitioner's medical records (totaling more than one hundred pages) and opinions from four physicians (including two neurologists) and a nurse. As such, the 1992 dismissal stemmed not from any nonfeasance or malfeasance on their part, but from the fact that the available evidence did not support a causal connection between the vaccination and petitioner's mental condition. Indeed, as the Special Master found in his 1992 decision, the first medical report provided by the parents did not attribute his condition to a vaccination, but instead observed that "the retardation (mental deficiency) was present at birth." *See Kennedy I*, No. 90–1009V, slip op. at 5.

In his briefs and at oral argument before this court, petitioner fails to provide any evidence to contradict the Special Master's findings regarding how his parents handled this case. He cites no factual evidence that his parents should have offered in the first stage of this proceeding, but did not. He offers no medical opinions or studies that they might have cited to supply the missing causal link between the DPT vaccine and petitioner's condition, claiming only that "[g]iven what we now know about the 'DPT' vaccination and its harmful adverse effects, expert testimony will be easy to obtain." Nor does he identify any legal or factual arguments that should have been made by his parents, but were not. And while petitioner claims that his parents should have sought further review of the Special Master's 1992 dismissal decision, he advances no arguments as to why that 1992 decision was wrong and would have been overturned.[24]

---

**24.** Petitioner claims that his mother did not understand the concept of an "expert" and, therefore, was ineffective in obtaining medical evidence for his case. This claim makes little sense. The record reflects that Special Master Hastings took great care in explaining what was needed to support petitioner's case; indeed, in an order dated September 5, 1991, he extensively described the sort of expert evidence that was needed to make petitioner's case. Moreover, it ap-

Instead, petitioner, through his counsel, proceeds as if it were self-evident that his parents, as laypersons, were incapable of mounting an effective case and that the result necessarily would have been different had counsel been appointed. In this regard, petitioner asks that he "be offered the opportunity to present his claim to the Court with competent representation."

General assertions such as these bespeak a fundamental misunderstanding of the nature of a motion for relief under RCFC 60(b). Such a motion (somewhat obviously) is not a pleading, like a complaint, in which the factual allegation are presumed true. *See* RCFC 7(a); *Girard Trust Bank v. Martin*, 557 F.2d 386, 389 (3d Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 612, 54 L.Ed.2d 479 (1977) (holding this); *Bigelow v. RKO Radio Pictures*, 16 F.R.D. 15, 17 (N.D.Ill.1954) (same). Nor does it constitute a mere invitation for the court to investigate further whether to grant relief. Rather, that motion seeks to set aside a final decision and it is incumbent upon the motion-filer to demonstrate that he or she is entitled to that relief—now. *See* RCFC 7(b) (indicating that motion must "state with particularity the grounds for seeking the or-

der"); *Girard Trust Bank*, 557 F.2d at 390 (applying this requirement to a Rule 60 motion); *see also Schneller v. Fox Subacute at Clara Burke*, 368 Fed.Appx. 275, 278 (3d Cir.) (per curiam), *cert. denied*, —— U.S. ——, 131 S.Ct. 505, 178 L.Ed.2d 370 (2010) (applying this requirement to a motion for reconsideration under Rule 59(e)). This is especially true under Rule 60(b)(6), which requires a movant to demonstrate the existence of "extraordinary circumstances," [25] using evidence that is "highly convincing," *Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987).[26] For this purpose, the conclusory allegations from counsel—and loose assurances of what evidence might be coming in the future—simply will not suffice. *See Doe v. Constant*, 354 Fed. Appx. 543, 547 (2d Cir.2009), *cert. denied*, —— U.S. ——, 131 S.Ct. 179, 178 L.Ed.2d 249 (2010) (conclusory allegations insufficient); *RLI Ins. Co. v. Vintage Contracting Co., Inc.*, 2010 WL 4063396, at \*3 (D.N.J. Oct. 15, 2010) (same). And, yet, such allegations—framed in the most general of terms—are all that petitioner offers. Petitioner, therefore, has failed to provide any factual grounding

---

pears that petitioner's mother understood the task at hand as she supplied not one or two, but five opinions (those of four doctors and a nurse) in attempting to support her son's claim. Based on this evidence, the court is unprepared to accept petitioner's claims.

In a similar vein, petitioner asserts that his mother failed to seek further review of the Special Master's decision because she concluded that the Vaccine Program was illiquid. He contends that she did not learn otherwise until watching a television program shortly before the motion for relief from judgment was filed. But, there are several problems with these assertions. For one thing, every indication is that petitioner's parents were fully able to understand and comply with the procedures adopted under the Vaccine Program—they followed court orders, filed motions, and made a number of filings. And, indeed, the Special Master went out of his way to ensure that they understood their responsibilities. Second, petitioner's parents plainly knew that if they did not file a motion for review, the Special Master's adverse decision would become final—they were advised of this by the last line in the July 13, 1992, decision, which stated that "[u]nless petitioner files a timely motion for review of this decision, the clerk shall enter judgment dismissing this petition with prejudice." *Kennedy I*, No. 90–1009V, slip op. at 6. Finally, petitioner provides no reason for this court to

believe that a motion for review of the 1992 decision would have been successful. Given this, it is hard to see how the decision of petitioner's parents not to file a motion for review reflects anything other than a view that further proceedings would have been futile.

**25.** *Ackermann*, 340 U.S. at 202, 71 S.Ct. 209; *Klapprott*, 335 U.S. at 613, 69 S.Ct. 384; *see also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir.2004); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983); *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971) (per curiam), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); *see also Gonzalez*, 545 U.S. at 535, 125 S.Ct. 2641.

**26.** *See also Carter v. Anderson*, 585 F.3d 1007, 1011–12 (6th Cir.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 3423, 177 L.Ed.2d 334 (2010) (indicating that this burden required "clear and convincing evidence"); *Fed. Deposit Ins. Corp. v. Alker*, 234 F.2d 113, 116–17 (3d Cir.1956) (a Rule 60(b)(6) motion "must be fully substantiated by adequate proof and its exceptional character must be clearly established to the satisfaction of the district court before it can be granted by the court").

whatsoever for his ineffective assistance claim, so as to show that "extraordinary circumstances" compel relief from judgment here. Like his claim under Rule 60(b)(4), petitioner's claim under Rule 60(b)(6), therefore, must be denied.[27]

### C.

Although the Special Master did not address this subject, the court feels compelled to consider the timeliness of petitioner's motion. Under RCFC 60(c)(1), motions under RCFC 60(b)(4) and (b)(6) must be brought within "a reasonable time." A significant question exists as to whether the instant motion—which was brought nearly forty years after petitioner received his DPT vaccination and more than seventeen years after his petition was dismissed—met this basic requirement.

While several circuits have refused to impose any limits on the filing of motions under Rule 60(b)(4),[28] this circuit is among those that have applied the timing limitation in Rule 60(c)(1) by its terms. *See Constant v. United States*, 929 F.2d 654, 657 n. 1 (Fed. Cir.1991); *Pueblo of Santo Domingo v. United States*, 647 F.2d 1087, 1089 (Ct.Cl.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Pfotzer v. United States*, 231 Ct.Cl. 794, 794 (1982) (per curiam), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *see also Western Shoshone Nat'l Council v. United States*, 279 Fed.Appx. 980, 985–86 (Fed.Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 899, 173 L.Ed.2d 107 (2009); *Bridgham by Libby v. Sec'y of Health & Human Servs.*, 33 Fed.Cl. 101, 104–05 (1995).[29] To determine the timeliness of a(b)(4) motion, courts consider the facts of each case, focusing on the length and circumstances of the delay in filing, prejudice to the opposing party, and any circumstances warranting equitable relief. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990); *see also Farm Credit Bank of Balt.*, 316 F.3d at 65. Here, petitioner and his family took seventeen years to file his motion—by any measure, an exceptionally long delay. Nor has petitioner explained why, in support of his motion, he failed to provide any evidence that his parents' handling of his case was incompetent and that he would have won his case had he (or his parents) been represented by an attorney. No doubt, petitioner's task in providing this proof was complicated by the passage of time. But, this delay cuts two ways for it also frustrates respondent's ability to mount a factual defense concerning events that occurred decades ago. Considerations such as these weigh heavily against finding that petitioner's motion under RCFC 60(b)(4) is timely.

And the same considerations impact whether petitioner's motion is timely to the extent it invokes RCFC 60(b)(6). Again, in assessing the timeliness of such motions, courts look to the particular circumstances of each case and "balance the interest in finality with the reasons for delay." *Grace*, 443 F.3d at 190 n. 8. As with motions under RCFC 60(b)(4), courts considering the timeliness of motions under Rule 60(b)(6) weigh " 'the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.' " *Thompson v. Bell*, 580 F.3d 423, 443 (6th Cir.2009), *cert. denied*, —— U.S. ——, 131 S.Ct. 102, 178 L.Ed.2d 29

---

**27.** Some of the cases which hold that the failure to appoint a guardian under Rule 17(c) renders a succeeding judgment voidable, not void, suggest that relief under rule 60(b)(4) might be had if a claimant could show that an attorney should have been appointed and that, owing to the failure to do so, successful arguments were not raised. *See, e.g., Zavala ex rel. Ruiz*, 876 F.2d at 784. To the extent this is the law, the court reiterates that petitioner has made no such showing here.

**28.** *See, e.g., United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir.2000) (en banc); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 142–43 (5th Cir.1996); *Hertz Corp. v. Alamo*

*Rent–A–Car, Inc.*, 16 F.3d 1126, 1130–31 (11th Cir.1994).

**29.** For other decisions joining the Federal Circuit in this view, *see, e.g., Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir.2008); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 901 (6th Cir.2006); *see also Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 n. 8 (2d Cir.2006), *cert. denied*, 549 U.S. 1114, 127 S.Ct. 962, 166 L.Ed.2d 707 (2007) (applying the limitation, but noting that courts have been exceedingly lenient in defining what is reasonable).

(2010) (quoting *Olle*, 910 F.2d at 365); *see Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410, 1412 (5th Cir.1994).

For his part, petitioner claims that his mother did not pursue the dismissal of her son's petition because she thought that the Vaccine Program was insolvent—that it lacked the funds to pay any judgment. But, he is unable to point to anything in the record to support this claim—certainly, there is no indication that the Special Master ever made a statement to petitioner's parents that could reasonably (or even unreasonably) be construed in this fashion. And there is evidence—including the April 22, 1992, letter sent by petitioner's mother—that the reason why petitioner's parents did not further pursue his claim was because they were unable to produce evidence that his condition was caused by the DPT vaccination. Moreover, petitioner (really, his counsel) would have this court believe that his mother labored under the misconception that the Vaccine Program was insolvent for seventeen years, until seeing a contrary news report. Yet, there is no explanation why, even if she labored under this misconception, petitioner's mother did not periodically check to see if funds had become available.

The court need not pass on the credibility of this assertion because it finds that, even if it is true, the countervailing factors identified above weigh against finding that the motion in question was filed within a "reasonable time." To be sure, this finding is somewhat out of order—as the normal approach is to determine timeliness of a motion first and then, if necessary, proceed to the merits. But, given how this matter proceeded below, it is sufficient to say that the motion in question is neither timely nor meritful. In short, there is no basis to overturn the Special Master's decision rejecting this petition.

### III.

Who can say whether petitioner would have fared better had his parents been formally appointed his guardians *ad litem* and

taken the Special Master's advice to obtain counsel under the Vaccine Program. *See* 42 U.S.C. § 300aa–15(a)(3) (permitting a petitioner to recover attorney's fees whether or not he or she prevails); *see also Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (noting the drawbacks of *pro se* representation). RCFC 60, however, does not permit the court to relieve petitioner from a seventeen-year-old adverse judgment based on speculation. It requires much more—certainly, more than a promise that better evidence will be offered in the future. The court reaches this conclusion hesitantly, fully cognizant of the circumstances, but confident that the Special Master's decision was well-grounded in the law and available facts.

Based on the foregoing, the court hereby DENIES petitioner's motion for review. No costs.[30]

**IT IS SO ORDERED.**

---

**30.** This order shall be unsealed, as issued, after May 12, 2011, unless the parties, pursuant to Vaccine Rule 18(b), identify protected and/or privileged materials subject to redaction prior to said date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for that redaction.