# United States Court of Appeals for the Federal Circuit

---

**W. J., BY HIS PARENTS AND LEGAL GUARDIANS, R.J. AND A.J.,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2022-2119

---

Appeal from the United States Court of Federal Claims in No. 1:21-vv-01342-KCD, Judge Kathryn C. Davis.

---

Decided: February 21, 2024

---

W. J., Staten Island, NY, pro se.

CASEN ROSS, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ABBY CHRISTINE WRIGHT; C. SALVATORE D'ALESSIO, LARA A. ENGLUND, HEATHER LYNN PEARLMAN, SARAH BLACK RIFKIN, Torts Branch, Civil Division, United States Department of Justice, Washington, DC.

ANGELA M. OLIVER, Haynes and Boone, LLP, Washington, DC, argued as amicus curiae counsel.

---

Before LOURIE, DYK, and STARK, *Circuit Judges.*

PER CURIAM.

This is a case brought under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300a-1 to -34, as amended ("the Vaccine Act"). R.J. and A.J., acting on behalf of appellant W.J. ("Appellant"), their son, and appearing without counsel, appeal from a decision of the United States Court of Federal Claims denying their petition for review and affirming a special master's grant of a motion to dismiss as untimely under the Vaccine Act's statute of limitations. We affirm.

I

W.J. was born on February 4, 2004. Although he is now over the age of 18, his parents, R.J. and A.J. ("Parents"), remain his legal guardians, a role they have held throughout his life. W.J. was administered a Measles, Mumps, and Rubella ("MMR") vaccine on February 24, 2005. About a year later, on March 7, 2006, W.J. was diagnosed with a speech delay. Another year later, on January 5, 2007, W.J. was diagnosed with autism. In the years that followed, W.J. experienced several bouts of immune-related blood disorders, including at least one resulting in hospitalization. After genetic testing in February 2019, Parents were informed that W.J. had been born with a chromosomal aberration known as an Xq28 duplication.

On May 7, 2021, Parents filed a petition on behalf of W.J. requesting compensation under the Vaccine Act for chronic encephalopathy and immunodeficiency issues caused either by the MMR vaccine or by its significant aggravation of pre-existing injuries relating to W.J.'s chromosomal abnormality. Parents argued that due to W.J.'s Xq28 chromosomal duplication, the MMR vaccine was inappropriately administered to him in contravention of the vaccine's warnings.

Parents filed the petition in the Court of Federal Claims without the assistance of counsel. As is required by the Vaccine Rules, the petition was assigned to a special

master. *See* Vaccine Rule 3(a); *see also* 42 U.S.C. § 300aa-12(d)(1). On June 3, 2021, the special master held an initial status conference, largely focusing on the petition's request for equitable tolling. During the conference, the following exchange occurred:

> [Special Master]: Okay. So I know you probably are aware of this based on the petition, there is a statute of limitations issue that we will need to address since that's a threshold issue, that is, if the statute of limitations has expired, then the case will be dismissed because it can no longer be brought. And I think that is something we probably need to deal with sooner rather than later so that we don't use a lot of your time, energy, and money and the Court's time and energy litigating a case where the statute of limitations has expired.
>
> And by talking about this I'm not diminishing in any way the experiences and the difficulty that your family has had. I just don't want to lead you to have any unrealistic expectations about how the case may proceed.
>
> So I think the best course of action, [Government Counsel], is probably for the Government to file a Rule 4 report with any motion to dismiss or other legal filing with regard to the statute of limitations. And then I can ask [R.J.] to file any reply or response which he may [wish] to do so, and then I can rule on that issue.
>
> [Government Counsel], what are your thoughts about that plan?
>
> [Government Counsel]: Yes, Special Master, that sounds like an appropriate plan.
>
> [Special Master]: [R.J.], does that plan – is that plan acceptable with you?
>
> [R.J.]: That sounds fair. Yes.

App'x 68-69 at 4:6-5:9.

On August 2, 2021, the Secretary of the Department of Health and Human Services ("Secretary") filed a motion to dismiss the petition as untimely. Parents responded to the motion, arguing that equitable tolling was appropriate due to fraudulent concealment and/or extraordinary circumstances.

Upon review, the special master noted that the latest possible time at which any timely claim could have been filed, based on the dates of manifestation asserted in the petition, was in April 2017, with many of the other claims having become untimely a decade earlier.[1] The special master found that Parents' petition, which was not filed until May 7, 2021, thus exceeded the Vaccine Act's 36-month statute of limitations. The special master rejected Parents' equitable tolling arguments on the grounds that (1) W.J.'s mental incapacity did not qualify as an extraordinary circumstance because Parents failed to plead facts demonstrating that they, as W.J.'s legal guardians, were unable to file a claim on his behalf; and (2) Parents failed to demonstrate that the government's alleged fraudulent concealment prevented them from timely pursuing compensation. Accordingly, the special master granted the Secretary's motion and dismissed the case as untimely.

Parents then filed a motion for review of the special master's decision in the Court of Federal Claims, arguing that the special master inappropriately raised the statute of limitations issue sua sponte, relied on an incorrect legal standard to reject their equitable tolling arguments, and impermissibly ruled on the merits of their claims. The court affirmed the special master's decision and denied the motion for review, rejecting Parents' arguments and finding that the special master acted within her discretion,

---

[1] Parents alleged that W.J. suffered (1) an encephalopathy Table injury, (2) a chronic encephalopathy injury, (3) a variety of immunodeficiency issues, and (4) significant aggravation of pre-existing cerebral and immunological damage. These different alleged injuries had different dates of manifestation.

properly applying both the correct standard of review and precedent governing equitable tolling.

Parents, continuing to act pro se and on behalf of W.J., timely appealed to us. We appointed amicus counsel ("Amicus") to elaborate on certain issues in this appeal, and she has done so admirably.[2]

We have jurisdiction under 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa-12(f).

## II

The Court of Federal Claims may only set aside a special master's findings of fact or conclusions of law if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). Findings of fact receive deferential review under an "arbitrary and capricious" standard, legal conclusions are reviewed de novo under the "not in accordance with the law" standard, and discretionary rulings are reviewed for "abuse of discretion." *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). We apply the same legal standards when reviewing a Court of Federal Claims judgment affirming that of a special master. *See id.* at 870. "That is, we may not disturb the judgment of the [Court of Federal Claims] unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*

It is within a special master's discretion to weigh evidence. *See id.* at 871. For this and other reasons, "reversible error is extremely difficult to demonstrate" unless the special master has failed to consider the relevant evidence of record, drawn implausible inferences, or failed to provide a rational basis for the decision. *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (internal quotation marks omitted); *see also Munn,* 970 F.2d

---

[2]    The court expresses its gratitude to Angela Oliver, who accepted the amicus representation and, in that capacity, filed three briefs and delivered oral argument.

at 870 (noting that arbitrary and capricious standard is "well understood to be the most deferential possible").

A motion to dismiss for failure to state a claim upon which relief may be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This appeal concerns numerous issues, most raised by Parents but others introduced by Amicus or raised sua sponte by the court. We address each in turn below.

## III

Before turning our attention to the arguments initially raised by Parents and Amicus, we address two questions that arose as this case proceeded before us: (i) whether a non-lawyer may proceed pro se in pressing an appeal of a Vaccine Act claim that was filed in the Court of Federal Claims on behalf of another person, and (ii) whether the general statute of limitations and tolling provision set out in 28 U.S.C. § 2501 applies to Vaccine Act claims.

## A

R.J. and A.J., the parents of W.J., are not lawyers. In the Court of Federal Claims, they filed a petition setting out a Vaccine Act claim on behalf of W.J. and proceeded to prosecute that claim pro se in front of the special master and then again before a judge. Doing so is, at present, expressly authorized by the Rules of the Court of Federal Claims ("RCFC"), *see* RCFC 83.1(a)(3) ("An individual who is not an attorney may represent oneself or a member of one's immediate family."), and Vaccine Rule 14(a)(2)

(same).³  The Court of Federal Claims held in *Kennedy v. Sec'y of Health and Human Servs.*, 99 Fed. Cl. 535, 542 n.7 (Fed. Cl. May 16, 2011), *aff'd*, 485 F. App'x 435 (Fed. Cir. 2012), that because the Vaccine Act "authorizes parents to *file* petitions on behalf of their offspring it also authorizes parents to *prosecute* those cases once filed" (citing 42 U.S.C. § 300aa-11(b)(1)(A)) (emphasis added).

When the panel reviewed the appellate briefing submitted by Parents and the Secretary, we determined we would benefit from appointment of Amicus counsel to address the issue of equitable tolling.  When Amicus and the Secretary appeared at oral argument,⁴ we inquired, sua sponte, as to whether pro se representation by one family member of another is permitted in federal courts.  *See* Oral Arg. at 1:01-2:26.⁵  Our inquiry was based on 28 U.S.C. § 1654, which provides that in all United States courts "parties may plead and conduct their own cases personally or by counsel," which other circuit courts have interpreted as prohibiting non-lawyer parents from "litigat[ing] the claims of their minor children in federal court."  *Myers v. Loudon Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005); *see also* 28 U.S.C. § 2503(a) ("Parties to any suit in the United States Court of Federal Claims may appear before a judge of that court in person or by attorney.").  It is also true that Fed. Cir. R. 47.3 provides that "[a]n individual . . . may choose to be represented by counsel or to proceed without counsel but may not be represented by a non-

---

³  The Vaccine Act directed the Court of Federal Claims to promulgate procedural rules for Vaccine Act cases to "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions."  42 U.S.C. § 300aa-12(d)(2)(A).

⁴  Parents did not participate in oral argument but did submit a memorandum in lieu of oral argument.  *See* ECF No. 58.

⁵  Available at https://oralarguments.cafc.us courts.gov/default.aspx?fl=22-2119_09262023.mp3.

member of the bar of this court," and our court has on at least one occasion applied this rule to deny parents the opportunity to represent their child in appealing denial of a Vaccine Act claim. *See Brice v. Sec'y of Health & Human Servs.*, 358 F.3d 865, 866 (Fed. Cir. 2004) ("[C]iting Federal Circuit Rule 47.3, the Clerk of Court informed [the minor Vaccine Act claimant]'s parents that they could not represent their son's interests . . . in this court."). Moreover, the Vaccine Act includes a provision for reimbursement of attorney's fees, which permits courts to award attorney's fees and costs even for unsuccessful petitions "brought in good faith" and prohibits attorneys from charging their clients more than the fees that are awarded. *See* 42 U.S.C. § 300aa-15(e); *see also Sebelius v. Cloer*, 569 U.S. 369, 373-74 (2013).

Following argument, the court ordered supplemental briefing on the representation question. *See* ECF No. 60. Having reviewed the supplemental briefing, we have determined that this case does not require us to answer our own question. As we have already noted, no party raised this issue. Even after we ordered supplemental briefing, the government does not ask us to dismiss this appeal based on lack of a proper representative for Appellant. Additionally, in permitting Parents to proceed before us pro se, we are acting consistent with some of our own non-precedential decisions. *See, e.g.*, *Miles v. Sec'y of Health & Human Servs.*, 769 F. App'x 925, 925 (Fed. Cir. 2019); *Rogero v. Sec'y of Health & Human Servs.*, 748 F. App'x 996, 997 (Fed. Cir. 2018); *Padmanabhan v. Sec'y of Health & Human Servs.*, 638 F. App'x 1013, 1013 (Fed. Cir. 2016). Moreover, it would be highly inefficient, and we think unfair to Parents – who proceeded precisely as the Vaccine Rules and RCFC prescribe, and then proceeded here in a manner we have previously permitted, all without objection from the government – to dismiss this now fully briefed and argued appeal, especially as it relates to a petition filed nearly three years ago (based on injuries allegedly suffered beginning more than 17 years ago).

We are aware that at least one judge of the Court of Federal Claims has recently suggested that the RCFC

permitting this type of pro se representation may need to be reexamined. *See Ricks v. United States*, 159 Fed. Cl. 823, 824 n.1 (Fed. Cl. May 6, 2022) (contending that RCFC 83.1(a)(3) "creates a disturbing uncertainty, i.e., whether [a claimant] consents to [a family member's] representation," and consequently advocating that "[t]he Court's Rules Committee should examine and potentially reform RCFC 83.1(a)(3)"). Nevertheless, for the reasons we have given above, we do not find it appropriate in this case to decide the representation question we alone injected into this appeal.

B

A question first raised in Parents' memorandum in lieu of oral argument is whether the tolling provision of 28 U.S.C. § 2501, which sets out the statute of limitations that applies generally in the Court of Federal Claims, has applicability in Vaccine Act cases. *See* Memorandum in Lieu of Oral Argument of Appellant W.J., ECF No. 58 at 1-2 (Sep. 6, 2023). We received post-argument briefing on this subject as well. Because resolution of this issue could be dispositive, and it presents a pure question of law, we will resolve it. We decide that § 2501's statute of limitations and tolling provision are not applicable here.

Section 2501 sets forth the general statute of limitations, and a tolling provision, for claims filed in the Court of Federal Claims. It provides that:

> [1] Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . .
>
> [2] . . .
>
> [3] A petition on the claim of a person under legal disability . . . at the time the claim accrues may be filed within three years after the disability ceases.

28 U.S.C. § 2501 (numbers added). Paragraph [1] sets the statute of limitations at six years after the claim accrues, but not for a person under legal disability at the time his

claim accrues; paragraph [3] permits such a person to file his claim as late as three years after his disability ceases, a time which could be far longer than six years after it accrues. If paragraph [3], the tolling provision of § 2501, is applicable here, Appellant's claim is timely because it is undisputed that W.J. still suffers from a legal disability and has at all pertinent times. We conclude, however, that neither § 2501's statute of limitations nor its tolling provision applies to Vaccine Act petitions.

As an initial matter, paragraphs [1] and [3] go along with one another, such that claims subject to the six-year statute of limitations are also subject to the three-year tolling provision. Likewise, *only* claims that are governed by paragraph [1] are also governed by paragraph [3]. Paragraphs [1] and [3] are directly related to one another. Although in isolation paragraph [3] may appear as if it applies broadly to all claims filed in the Court of Federal Claims, in context it is clear that paragraph [3] only applies to claims with statutes of limitations established by paragraph [1]. These conclusions about the relationship between paragraphs [1] and [3] are confirmed by the statutory history leading up to the present version of § 2501.

Initially, the tolling provision appeared in § 1069 of the Revised Statutes of the United States as a proviso that was plainly linked to the six-year statute of limitations set out in that same section. *See United States v. Greathouse*, 166 U.S. 601, 602-06 (1897) (discussing former statute); *see also United States v. Morrow*, 266 U.S. 531, 534-35 (1925) ("The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation. Its grammatical and logical scope is confined to the subject-matter of the principal clause. And although sometimes used to introduce independent legislation, the presumption is that, in accordance with its primary purpose, it refers only to the provision to which it is attached.") (internal citations omitted). In 1911, the tolling provision was explicitly incorporated into the Tucker Act as a proviso to that statute's six-year statute of

limitations. *See* Judicial Code of 1911, Pub. L. No. 61-475, § 156, 36 Stat. 1087, 1139 (1911). In 1926, when the statute of limitations was codified in the first version of the U.S. Code as 28 U.S.C. § 262 (1926 ed.), the proviso language was omitted. Finally, in 1948, the current version of 28 U.S.C. § 2501 incorporated the phrase "person under legal disability" but, consistent with the U.S. Code in 1926 (and the 1940 ed.), left out the proviso language. Pub. L. No. 80-773, § 2501, 62 Stat. 869, 976 (1948).

Notwithstanding the change in the codified language, we see no reason why the tolling provision in § 2501 should not still be read as a proviso to the six-year statute of limitations. The change in language between the Statute at Large and the U.S. Code in 1926, and thereafter, appears to be a purely editorial one. Furthermore, the parties have pointed to no authority nor any persuasive argument for reading the tolling provision of § 2501 independent from the six-year statute of limitations provision. Thus, the paragraph [3] tolling provision is inapplicable to any petition not governed by the paragraph [1] six-year statute of limitations.

Next, we conclude that § 2501's six-year statute of limitations does not apply to Appellant's Vaccine Act claim. In the Vaccine Act, Congress established a specific statute of limitations for claims based on vaccines (including MMR) set forth in the Vaccine Injury Table: 36 months after "the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2). The Vaccine Act contains no tolling provision. As we have previously explained, § 2501's general provisions may be superseded by specific statutes setting out different periods for particular types of claims. *See, e.g., Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) (holding that two- or three-year statute of limitations under Fair Labor Standards Act ("FLSA") governs FLSA violation claims brought in Court of Federal Claims); *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1367-68 (Fed. Cir. 2002) (holding that three-year filing period under Interstate Commerce Act ("ICA"), rather than six-

year period of § 2501, governs all actions brought under ICA); *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1580 (Fed. Cir. 1987) ("Once a contractor elects to proceed under the Disputes Act, the six-year statute of limitations in 28 U.S.C. § 2501 is not applicable."). As specific statutes typically control over more general ones, *see, e.g.*, *First Nationwide Bank v. United States*, 431 F.3d 1342, 1348 (Fed. Cir. 2005), it follows that the specific limitations provision in the Vaccine Act governs Vaccine Act claims and the general provision of § 2501 does not.

Since § 2501's six-year statute of limitations does not apply to Vaccine Act claims, the tolling provision of § 2501 is equally inapplicable. To be timely, then, Parents must have filed the petition no later than 36 months after the "occurrence of the first symptom or manifestation of onset or of the significant aggravation of" W.J.'s MMR vaccine-related injuries.

## IV

We now turn to the principal arguments raised by Parents and Amicus. We begin with equitable tolling, which is the focus of this appeal, and then address additional issues pressed by Parents.

## A

Parents and Amicus argue that the statute of limitations should have been equitably tolled, which would result in their petition being treated as having been timely filed. As we have already noted, Section 16(a)(2) of the Vaccine Act governs claims resulting from vaccines administered after October 1, 1988, and reads:

> if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

42 U.S.C. § 300aa-16(a)(2). This statute of limitations begins to run from "the first symptom or manifestation of an alleged vaccine injury," regardless of whether or not that symptom is sufficient for diagnosis. *See Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013).

Parents and Amicus assert that the petition filed on behalf of W.J. was timely because of equitable tolling. Equitable tolling pauses or "tolls" a statutory limitations period, serving to extend otherwise explicit time limitations on filing set by Congress. *See Arellano v. McDonough*, 598 U.S. 1, 6 (2023). Such tolling is generally available "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Alvarez*, 572 U.S. 1, 10 (2014). We have previously found that a court may equitably toll the Vaccine Act's limitations period, *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1344 (Fed. Cir. 2011) (en banc), and that mental incapacity may be a basis for equitable tolling, *K.G. v. Sec'y of Health & Human Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020). The doctrine of fraudulent concealment may also toll a statute of limitations. *See, e.g.*, *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1142 (Fed. Cir. 1996).

Parents and Amicus assert that equitable tolling is warranted here based on (1) W.J.'s mental incapacity and inability to communicate, creating an extraordinary circumstance, (2) W.J.'s minority status, and (3) the government's fraudulent concealment of a connection between the vaccine and autism. We address each argument in turn.

1

In support of their contention that W.J.'s mental incapacitation warrants equitable tolling, Parents and Amicus point to *K.G. v. Sec'y of Health & Human Servs.*, 951 F.3d at 1382, in which we held that equitable tolling may be available to mentally incapacitated individuals under the Vaccine Act even if they had an appointed legal guardian during their incapacitation. There, K.G., an adult petitioner, had suffered from alcoholism, anxiety, depression,

and memory loss so severe that it ultimately resulted in a stay at an in-patient facility for three years. *See id.* at 1377. K.G. was also found to have had such a strained and incommunicative relationship with her sister, her then-acting legal guardian and conservator, that the sister ultimately withdrew from those roles. K.G.'s cognitive function ultimately improved and her conservatorship was terminated, after which she filed a petition for compensation under the Vaccine Act. The Court of Federal Claims initially affirmed the special master's denial of equitable tolling on the basis that the petitioner, K.G., had an acting legal guardian at the time of her mental incapacitation. On appeal, we declined to adopt a "per se rule" that the presence of a legal guardian alone foreclosed equitable tolling. *Id.* at 1381-82. We then remanded for the special master to determine whether equitable tolling was appropriate in light of "all relevant facts and circumstances." *Id.* In doing so, we explained that the special master would have to "analyze[] the facts to determine whether [the] legal guardianship alleviated the extraordinary circumstance" of the petitioner's mental incapacity. *Id.* at 1381.

*K.G.* further establishes that, in considering whether equitable tolling may be appropriate, the fact that "a mentally incapacitated individual has a legal representative is just one of many factors that may further inform the diligence inquiry." *Id.* at 1382. We also held:

> [t]he significance of a legal guardian may depend on a number of factors, including: the nature and sophistication of the guardian (parent, lawyer, family member, or third-party), the timing of the institution of the guardianship (before or after the vaccination, for example), the nature of the guardian's rights and obligations under state law, the extent to which the claimant's mental incapacity interferes with her relationship and communication with her guardian, the quality and nature of the guardian's relationship with the claimant, and any conflicts of interest that would inhibit the guardian from bringing a Vaccine Act claim on the claimant's behalf.

*Id.*

Parents and Amicus contend that, here, the special master applied a per se rule, directly contrary to our holding in *K.G.* We disagree. Instead, in her decision, the special master compared W.J.'s circumstances to those presented in *K.G.*, correctly distinguishing them:

> Unlike K.G., W.J. was an infant at the time of his vaccination, and the petitioners, W.J.'s parents, were capable of filing a claim on his behalf. W.J.'s parents have not filed any evidence to suggest that they were incapacitated in any way during any time frame relevant to their petition. While the Court in *K.G.* confirmed an equitable tolling right for incapacitated individuals, nothing in the decision negated a legal representative's rights and responsibilities under the Vaccine Act. . . . [P]etitioners had the right and responsibility to bring a timely claim on W.J.'s behalf. . . .

> W.J.'s "mental incapacity" does not serve as an "extraordinary circumstance." Petitioners, as W.J.'s legal representatives [and] his parents, had the ability to file a petition 36 months from the onset of the earliest symptom or manifestation of W.J.'s injury. The same is true for all petitions brought on behalf of all minors. Parents or other legal representatives must file the petition on behalf of a minor within the applicable statute of limitations.

App'x 38.

This analysis amounts to more than application of the per se rule we declined to adopt in *K.G.* The special master did not simply invoke the presence of legal guardians and, as a consequence, decline to apply equitable tolling. Instead, in compliance with our instruction in *K.G.*, the special master considered whether W.J.'s mental incapacity constituted an extraordinary circumstance notwithstanding Parents' guardianship and found, based on a lack of evidence, that it did not. We find the special master's extraordinary circumstance findings, and the subsequent

affirmance by the Court of Federal Claims, were not an abuse of discretion.

Furthermore, we agree that the facts here do not support equitable tolling. R.J. and A.J. are the parents and legal guardians of W.J. and have been throughout W.J.'s life, including when he received the MMR vaccine. As W.J.'s parents and legal guardians, Parents were expressly authorized to bring a claim on W.J.'s behalf. *See* 42 U.S.C. § 300aa-11(b)(1)(A) (permitting legal representatives of minors or disabled individuals to file petitions on their behalf); 42 U.S.C. § 300aa-33(2) (defining "legal representative" to include "a parent or an individual who qualifies as a legal guardian under State law"). Unlike in *K.G.*, here, Parents have not shown any reason why they, as legal guardians, could not have filed the petition within the statutory timeframe, despite W.J.'s mental incapacitation. Indeed, Parents made other medical decisions on behalf of W.J. throughout this exact timeframe. *See, e.g.*, App'x 180-84. There is no suggestion that Parents have a strained relationship with their son or that there are any conflicts of interest that would have dissuaded them from filing a petition earlier. Although, as we held in *K.G.*, mental incapacity of an individual with a legal guardian *may* still merit equitable tolling, it does not always.

Therefore, we agree with the Court of Federal Claims and the special master that Parents failed to plead facts establishing that W.J.'s mental incapacitation constituted extraordinary circumstances warranting equitable tolling.

2

Amicus argues that minority tolling should apply, contending that the statutory purposes underlying the Vaccine Act demonstrate Congress' intent for a child's minority status to qualify as a per se extraordinary circumstance warranting tolling. We are unpersuaded.

The plain language of the Vaccine Act does not include, or even suggest, minority tolling, and Amicus does not contend otherwise. Instead, Amicus points to legislative history to demonstrate the pro-child and pro-claimant nature

of the Act.  But the passages on which Amicus relies only support Congress' general intent to compensate injured children or its consideration of staying co-pending state law actions during the pendency of Vaccine Act claims.  *See generally* H.R. Rep. No. 99-908 (1986).  Even assuming legislative history could make up for a lack of statutory text (a dubious proposition we need not reach), Amicus points to no statements by any individual legislator specifically contemplating minority tolling.  Given that Congress created the Vaccine Act to "protect [the Nation's] *children*," H.R. Rep No. 99-908, at 4 (1986) (emphasis added), and set forth an explicit statute of limitations for filing petitions, we conclude that the lack of any statutory provision providing for minority tolling is conclusive proof that Congress did not intend to provide for such tolling.

3

Fraudulent concealment may toll a statute of limitations where, "assuming due diligence on the part of the plaintiff . . . the misconduct in question has been concealed, or is of such character as to conceal itself."  *Simmons*, 86 F.3d at 1142 (internal quotation marks omitted).  "[A] mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment."  *Id.* at 1143.

Parents argue they have shown that the government "fostered and promoted the scientific finding" that there is no link between the MMR vaccine and autism.  App'x 19 (internal quotation marks omitted).  In this way, they contend, the government concealed the evidence Parents needed to file their petition in a more timely manner.  Even reading Parents' petition in the light most favorable to W.J., it defeats their contention of fraudulent concealment.  By Parents' own account, their petition includes "hard evidence of a link between vaccines and autism," including reference to over 5,100 cases filed by parents seeking compensation for their child's autism on the basis of a vaccine-related injury.  App'x 19, 41; *see also* App'x 39, 58, 102-04.  Hearings for these cases took place between 2007 and 2009, confirming that evidence of the type Parents contend was

fraudulently concealed by the government was available in the timeframe when W.J.'s petition would have been timely. Parents have failed to adequately allege that their exercise of reasonable diligence could not have revealed to them the basis for their claim at that time.

Parents have additionally failed to plead any facts to suggest intentional concealment by the government; indeed, to the contrary, they have disavowed any allegation that the government engaged in intentional fraud. App'x 59 ("[Appellants] do not explicitly claim that these denials of any connection between vaccines and autism by the federal government and the vaccine manufacturers are intentionally fraudulent."). But equitable tolling is only warranted when the "fraud has been concealed" and the party alleging concealment has exercised due diligence "in coming to the knowledge of the fraud." *Bailey v. Glover*, 88 U.S. 342, 349 (1874); *see also Simmons*, 86 F.3d at 1142.

For these reasons, fraudulent concealment cannot serve as a basis for equitable tolling in this case.

B

Parents assert additional errors by the special master, some of which we discuss below. None has merit.

1

Parents argue that Congress declined to authorize special masters to entertain or rule upon Rule 12(b)(6) motions to dismiss. They point to Section 300aa-12(d)(2)(C) of the Vaccine Act, which specifically entrusts special masters with the power to rule on summary judgment motions but does not refer to motions to dismiss. However, the language of the statute is merely exemplary, pointing to procedural rules that may be adopted "*includ[ing]* the opportunity for summary judgment." 42 U.S.C. § 300aa-12(d)(2)(C) (emphasis added). The Vaccine Rules reiterate this inclusiveness, explaining that "[t]he special master may decide a case on the basis of written submissions without conducting an evidentiary hearing," and that "[s]ubmissions *may include* a motion for summary judgment." Vaccine Rule 8(d) (emphasis added). Nothing in this

language, nor any other provision of the Vaccine Act, excludes 12(b)(6) motions to dismiss.

Additionally, "[t]he statute and the Vaccine Rules give the special masters broad authority in conducting proceedings under the Act." *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1371 (Fed. Cir. 2012). This broad authority is embodied in, for example, Vaccine Rule 1(b), providing that "[i]n any matter not specifically addressed by the Vaccine Rules, the special master may regulate applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently." Moreover, Vaccine Rule 1(c) provides that the RCFC, which include RCFC 12(b)(6), apply to the extent that they are consistent with the Vaccine Rules. That these authorities all contemplate and certainly do not prohibit motion to dismiss practice is confirmed by the long experience of special masters entertaining such motions in countless proceedings.

We therefore find that special masters have jurisdiction to rule on motions to dismiss.

2

The doctrine of separation of powers did not bar the special master from dismissing W.J.'s claims. As an initial matter, we do not agree with Parents that the special master raised the statute of limitations issue sua sponte. Instead, as the special master observed during the initial status conference, the possible untimeliness of W.J.'s claims is evident on the face of the petition. *See* App'x 68. The petition alleges that W.J. received his first MMR vaccine in 2005. As the petition was not filed until 2021, 17 years later, the special master – who, after all, solely handles cases arising under the Vaccine Act – noticed that the question of whether W.J.'s claims were timely was an obvious concern.

In any event, special masters, just like judges, have wide latitude in managing their docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[E]very court [has inherent power] to control the disposition of the causes on

its docket with economy of time and effort for itself, for counsel, and for litigants."). This broad discretion is explicitly outlined in the statute and the Vaccine Rules. *See, e.g.*, 42 U.S.C. § 300aa-12(d)(2)(A) (stating that Vaccine Rules shall "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions"); Vaccine Rule 3(b) ("The special master is responsible for . . . conducting all proceedings . . . [and] endeavoring to make the proceedings expeditious, flexible, and less adversarial."). Special masters, like judges, can prioritize potentially case-dispositive issues at the start of a case, in an exercise of their discretion. *See, e.g.*, *Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

Here, the special master acted well within her discretion in identifying a concern regarding the statute of limitations at the outset of the case. That the government happened to be the party filing the motion to dismiss, which they very likely would have filed regardless of the special master's inquiry and which Parents had the opportunity to oppose, does not convert the special master's routine case management action into a separation-of-powers issue.

3

Parents next argue that the trial court and special master erred in dismissing their fraudulent concealment claim because they misapplied the *Iqbal/Twombly* pleading standard and considered material outside the pleadings. We disagree. Rather, the court and special master merely, and appropriately, found that the facts pleaded in the petition did not provide the support necessary to adequately allege fraudulent concealment. The court and special master properly evaluated Parents' petition, including by assuming all pleaded facts to be true, and reached the conclusion that the petition did not state a fraudulent concealment claim on which relief could be granted, a conclusion we have reviewed and now uphold.

We therefore affirm the Court of Federal Claims' conclusion that equitable tolling was not appropriate and, thus, that Appellants' petition was not timely filed under 42 U.S.C. § 300aa-16(a)(2).

## V

We have considered Parents' remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the judgment of the Court of Federal Claims.

**AFFIRMED**

COSTS

No costs.